CLARENCE BURRIS v. ANNIE BURRIS.

(*September* 14, 1950.)

LAYTON, J., sitting.

*Joseph H. Flanzer* for the Plaintiff.

*Albert L. Simon* for the Defendant.

Superior Court for New Castle County, No. 209, Civil Action, 1950.

494

LAYTON, J.

The constitutional immunity against self-incrimination is fairly implanted in our system of jurisprudence but I see no reason to extend it beyond those reasonable limitations prescribed by the weight of the more modern authorities. Concededly, the older cases indicate a settled practice to advise a witness as to his privilege when the warning appeared needed, but the more modern decisions have somewhat modified the ancient rule. Wigmore in his treatise on this point appearing in Volume 4, 3d Ed., Sec. 2269 has this to say:

"Section 2269. Judge's Warning to the Witness. It is plausible to argue that the witness should be warned and notified, when a criminating fact is inquired about, that he has by law an option to refuse an answer; and this view was often in-

sisted upon, a century ago, by the leaders at the Bar: * * * But there are opposing considerations. In the first place, such a warning would be an anomaly; it is not given for any other privilege; witnesses are in other respects supposed to know their rights; and why not here? In the next place, it is not called for by principle, since, until the witness refuses, it can hardly be said that he is compelled to answer; nor is it material that he believes himself compelled, for the Court's action, and not the witness' state of mind, must be the test of compulsion. Again, the question can at any rate only be one of judicial propriety of conduct, for no one supposes that an answer given under such an erroneous belief should be struck out for lack of the warning. Finally, in practical convenience, there is no demand for such a rule; witnesses are usually well enough advised beforehand by counsel as to their rights when such issues impend, and judges are too much concerned with other responsibilities to be burdened with the prevision of individual witnesses' knowledge; the risk of their being in ignorance should fall rather upon the party summoning than the party opposing.

"Nevertheless, it is plain that the old practice was to give such a warning, when it appeared to be needed. But, as general knowledge spread among the masses, and the preparation for testimony became more thorough, this practice seems to have disappeared in England, so far at least as any general rule was concerned.

"In the United States both the rule and the trial custom vary in the different jurisdictions. No doubt a capable and painstaking judge will give the warning, where need appears; but there is no reason for letting a wholesome custom degenerate into a technical rule."

A number of cases in support of the text just quoted are cited in a footnote and a study of most of the cases seemingly ar-

riving at an opposite result reveals that when the criminating question was asked counsel objected and requested the trial judge to warn the witness of his privilege which was refused. Whatever the correct answer to that exact situation may be I am not called upon to decide, for, here, neither plaintiff nor his counsel objected when the question was asked and the answer was given freely. Upon these facts I am of the opinion that the plaintiff waived his privilege and the answer to the question must stand. It follows that the decree must be denied.